IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC DICKERSON,            )
         Plaintiff,     )
                           )
     v.                    )    C.A. No. 06-289 Erie
                           )    District Judge McLaughlin
SUPER. MARILYN BROOKS, et al.,   )    Magistrate Judge Baxter
         Defendants.   )

# MAGISTRATE JUDGE'S
# REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendants Baker, Mowry and Telega [Document # 9] be granted. The Clerk of Courts should be directed to terminate these Defendants from this action.

It is further recommended that the motion to dismiss filed by the Commonwealth Defendants [Document # 32] be granted in part and denied in part. More specifically,

    a)   the motion to dismiss should be granted as to the dismissal of Defendant "Pennsylvania Department of Corrections SCI-Albion" based upon Eleventh Amendment immunity;

    b)   the motion to dismiss should be granted as to the dismissal of Defendants Beard and Brooks; and

    c)   the motion to dismiss should be denied as to Defendants Overton, Wilkes, and Youcklan.

The Clerk of Courts should be directed to terminate "Pennsylvania Department of Corrections SCI-Albion," Beard, and Brooks as Defendants from this action. As Defendants have not moved to dismiss the Eighth Amendment (non-medical) claim against Defendant Bennett, that claim remains pending. The claims against Overton, Wilkes, and Youcklan should also remain pending. Further, Plaintiff will be directed to amend his complaint to more fully allege his Eighth Amendment medical claim against the Commonwealth Defendants.

It is further recommended that the motion to dismiss filed by Defendant Millcreek

Hospital [Document # 43] be granted.

By separate Order filed this day, Plaintiff's motion requesting leave to add Defendant Prison Health Services [Document # 73] is granted and Plaintiff is directed to file an amended complaint in conformity with this Report and Recommendation before November 20, 2007.

By separate text Order filed this day, Plaintiff's motion to dismiss the motion to dismiss [Document # 62] is converted to an Opposition Brief.

By separate Order filed this day, Plaintiff's "Motion to Produce Documents" [Document # 77] is granted and Plaintiff's "Motion of Notice to Serve Subpoena to Defendant Maxine Overton" [Document # 78] is denied.  A telephonic hearing will be conducted as to Plaintiff's "Motion of Retaliation by Defendant's and Staff Members" [Document # 80].

## II.    REPORT

### A.    Relevant Factual History

On December 7, 2006, Plaintiff Eric Dickerson, an inmate currently incarcerated within the state correctional system, filed this *pro se* action, raising civil rights claims under §1983. Named as Defendants in the original complaint are: Superintendent Marilyn Brooks; Deputy Superintendent Joyce Wilkes; Dr. Mark Baker; Physician's Assistant Dan Telega; Physician's Assistant Tammie Mowry; Medical Administrator Maxine Overton; Dr. Fraider[1]; Dietary Manager Frank Youcklan; Correctional Officer Bennet; Millcreek Medical Center; Secretary of Correction Jeffrey Beard; and Pennsylvania Department of Corrections-SCI-Albion.  As relief, Plaintiff seeks "proper medical care" and monetary damages.

In his original complaint, Plaintiff alleges that on December 9, 2004, he slipped and fell in the dietary section of the SCI-Albion, injuring his right side.  Document # 3, ¶ 2.  Over the

---

[1] According to the docket in this case, Dr. Fraider has not yet been served with a copy of the complaint.

next two weeks, Plaintiff was examined by Defendants Physician's Assistants Mowry and Telega for severe abdominal pain. On December 26, 2004, Plaintiff fell while walking from the "pill line" to his cell because Defendant Correctional Officer Bennet refused to allow Plaintiff to wait for an escort to assist him. Id. at ¶¶ 6,7. Plaintiff was later examined by Defendant Telega. Id. at ¶ 8.

Plaintiff continued to complain of pain. In early January, Plaintiff reported to the Medical Department complaining of profuse sweating, as well as coughing up blood and blood in his stool. Defendant Baker diagnosed Plaintiff with a cold. Id. at ¶¶ 13,14.

In early February, Plaintiff was examined by Defendant Mowry complaining of extreme abdominal pain, coughing up blood and blood in his stool. Id. at ¶ 17.

According to Plaintiff, x-rays revealed that Plaintiff had fluid on his lungs and an enlarged heart. Plaintiff alleges that Defendant Baker took no action. Id. at ¶ 18a.

On March 28, 2005, Plaintiff received an MRI at Meadville Medical Center. Plaintiff alleges that the technician told him that something was wrong but failed to elaborate. Prison officials indicated to Plaintiff that there were no abnormalities on the MRI. Id. at ¶ 20.

Plaintiff continued to suffer abdominal pain and difficulty breathing. On April 12, 2005, Plaintiff spent the night in the infirmary and was put on oxygen, but released the following day. Id. at ¶ 21.

On April 19, 2005, Plaintiff sent a request slip to Defendant Wilkes informing her of his severe pain, coughing up mucus, vomiting blood, blood in his urine and seizures. No action was taken. Id. at ¶ 22.

In May of 2005, Plaintiff collapsed and went into convulsions and was taken to the infirmary. A couple of days later, Plaintiff was then transported to Defendant Millcreek Hospital. Plaintiff alleges that he was transferred to Hamot Hospital when Millcreek "could not handle the severeness of the Plaintiff's illness." Once at Hamot Hospital, Plaintiff underwent emergency abdominal surgery and remained hospitalized for an extended period of time. Id. at page 11.

### B. Relevant Procedural History

Defendants Baker, Mowry and Telega (all employees of Prison Health Services, Inc.) have filed a motion to dismiss arguing that Plaintiff has failed to state a claim against them and has failed to exhaust his administrative remedies in accordance with the PLRA. Document # 9. Plaintiff has filed a pleading styled as a "Motion against Defendant/s Mark Baker, Dan Telega and Tammie Mowry for Denial of Medical Service and Treatment" which this Court liberally construes as an opposition brief. Document # 62. By separate text order issued today, this Court will direct the Clerk of Courts to redocket this filing as an Opposition Brief.

Defendants Brooks, Wilkes, Overton, Youcklan, Bennett (aka Benek), Beard, and Pennsylvania Department of Corrections and SCI Albion are all represented by the Attorney General's office and will hereinafter be referred to as "the Commonwealth Defendants." These Defendants have filed motion to dismiss [Document # 32] and Plaintiff has filed a Brief in Opposition [Document # 48].

Defendant Millcreek Hospital has filed a motion to dismiss [Document # 43] arguing that Plaintiff has failed to state a claim against it. Plaintiff has filed an Opposition to this motion. Document # 54.

The issues are fully briefed and are ripe for disposition by this Court.

### C. Standards of Review

#### 1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read

"with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss - Fed.R.Civ.P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

**D.    Motion to dismiss by Defendants Baker, Mowry and Telega**

Defendants Baker, Mowry and Telega move to dismiss based upon Plaintiff's failure to fully exhaust his administrative remedies in accordance with the PLRA.[2]

**1.    The Exhaustion Requirement of the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought,"

---

[2] This Court is flummoxed by the fact that none of the other Defendants (especially the Commonwealth Defendants, who would seem to have the most direct access to the pertinent information) have raised the failure to exhaust as a basis for their motions to dismiss. Because failure to exhaust is an affirmative defense (see Jones v. Bock, ___ U.S. ___, ___, 127 S.Ct. 910, 921 (Jan. 22, 2007)), this Court may not *sua sponte* assert such a defense on behalf of the other Defendants.

[3] A plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, ___ U.S. ___, ___ 126 S.Ct. 2378, 2384-88 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 2382. See also Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion).

A plaintiff need not affirmatively plead exhaustion. Jones v. Bock, ___ U.S. ___, ___, 127 S.Ct. 910, 921 (Jan. 22, 2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). Instead, it is the burden of a defendant asserting the defense to plead and prove it. Id.

    **2.**    **The Administrative Process Available to State Inmates**

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, ___ U.S. at ___, 127 S.Ct. at 922-23.

The DC-ADM 804 grievance system, available to state prisoners, consists of three

7

separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. Exhaustion Applied

In the case at hand, Defendants Baker, Mowry and Telega argue that Plaintiff has failed to exhaust his administrative remedies as to his claims against them in that Plaintiff "did not take any of them to the third level as required. He had a duty to exhaust all administrative remedies. He did not do so." Document # 10, page 11. In his Opposition brief, Plaintiff does not argue to the contrary.[4]

Plaintiff has not exhausted his administrative remedies in accordance with the PLRA. Accordingly, Defendants motion to dismiss [Document #9] should be granted in this regard and this case should be dismissed as to Defendants Baker, Mowry and Telega.

### E. Motion to dismiss by the Commonwealth Defendants

---

[4] Although Plaintiff is not under an affirmative obligation to plead such in his complaint [see Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) ("We thus join the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant.")], even a review of all of the documents attached to Plaintiff's original complaint does not indicate that he ever fully exhausted his administrative remedies as to any claim that is the subject of this civil rights action. In his "Supplement to the Complaint," Plaintiff baldly asserts that he has exhausted all remedies. Document # 34, page 2. However, such a bald assertion is not enough in light of the pending motion to dismiss.

### 1. Eleventh Amendment Immunity

Plaintiff has named "Pennsylvania Department of Corrections SCI-Albion" as a Defendant in this action.

The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity). The only ways that a state may be sued in federal court are if (1) the state has waived its Eleventh Amendment immunity (Kentucky v. Graham, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001)).

SCI-Albion is an institution owned and operated by the Pennsylvania Department of Corrections. 71 P.S. § 310-0. Thus, the Eleventh Amendment applies to this lawsuit. So, unless SCI- Albion has consented to suit here or the Congress has expressly abrogated this institution's Eleventh Amendment immunity, neither of which has occurred, this case should be dismissed against the prison. The motion to dismiss filed by Commonwealth Defendants [Document # 32] should be granted in this regard and the "Pennsylvania Department of Corrections SCI-Albion"should be dismissed as a Defendant to this action.

### 2. *Respondeat superior*

Next, the Commonwealth Defendants argue that several individual defendants should be dismissed for failure to state a claim as they had no alleged personal involvement with Plaintiff's medical treatment.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise

or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

                        **a)**         **Defendant Department of Corrections Commissioner Beard**

Plaintiff alleges that Defendant Beard responded to a letter inquiry from Michael Coyel explaining that Plaintiff was receiving proper medical treatment (which Plaintiff alleges was false). See Document # 3, Original Complaint, page 4, Document # 48. This allegation alone does not state a sufficient level of personal involvement by Defendant Beard, the Department of Corrections Commissioner whose office is located in Harrisburg. Accordingly, the motion to dismiss should be granted and Defendant Beard should be dismissed from this action.

                        **b)**         **Defendant Superintendent Brooks**

Plaintiff alleges that Defendant Brooks "wouldn't send me out to hospital and did nothing for my well being, as head of the Institution she simply past [sic] the buck on by stating that the Institution has licensed doctors and staff." Document # 3, page 4.

Non-medical prison officials cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [...] If a prisoner is under the care of medical experts, a non-

medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d at 236, quoting Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993).

Accordingly, the motion to dismiss should be granted in this regard and Defendant Brooks should be dismissed from this case.

### c)   Defendants Medical Administrator Overton and Deputy Superintendent Wilkes

As to Defendant Overton, Plaintiff alleges that he wrote to her "telling her about how I had fluid in my lungs and how I was throwing up blood, and not getting treatment for these symptoms," but she did nothing to assist him.  Document # 3, page 5.  As to Defendant Wilkes, Plaintiff alleges that he sent a request slip to her complaining of severe pain, coughing up blood, blood in his urine and seizures and she did nothing.  Id. at ¶ 22.

"While a non-physician supervisory defendant has no duty to intervene, she may be held liable for not responding when she had knowledge of medical mistreatment."  Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D. Pa.) explaining Spruill, 372 F.3d at 236.  This is precisely the case here: Plaintiff alleges that he contacted Defendant Overton about "not getting treatment for his symptoms" and that he contacted Defendant Wilkes about his serious symptoms.  According to Plaintiff, neither Overton nor Wilkes took any action.  Plaintiff's allegations are sufficient to withstand a motion to dismiss at this initial stage of the litigation.

Accordingly, the motion to dismiss should be denied in this regard.

### d)   Defendant Dietary Manager Youcklan

As to Youcklan, Plaintiff specifically alleges that "Defendant takes no responsibility for what happened, but does agree that the Plaintiff was injured in Dietary dining wash area.  The Defendant keep paying the Plaintiff for the max of five month's until the Plaintiff was taken out of the institution and placed in the hospital."  Document # 3, page 5.  This Court liberally construes the complaint to raise a claim against Defendant Youcklan due to the known slippery

wet conditions which existed in the Dietary Department.  Document # 3, page 13, ¶ 1 and page 7, ¶ 1.  At this early stage of the proceedings it is possible that Plaintiff can amend his pleadings to sufficiently allege Defendant Youcklan's personal involvement in this constitutional violation.  Accordingly, the motion to dismiss should be denied as to Defendant Youcklan.

### 3.     The Eighth Amendment Claim

Next, the Commonwealth Defendants move to dismiss on the grounds that Plaintiff has failed to state an Eighth Amendment claim upon which relief may be granted.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).  The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury"  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

At this early stage of the proceedings, Plaintiff has sufficiently alleged a delay in medical care in order to state an Eighth Amendment deliberate indifference claim.  However, what is not clear from the complaint is **who** Plaintiff is alleging was responsible for the delay in medical

treatment. Plaintiff will be directed to amend his complaint to more fully state his Eighth Amendment claim.

Accordingly, the motion to dismiss should be denied.

### 4. Defendant "Bennett" (aka Benek)

Plaintiff alleges that Defendant violated his constitutional rights and caused him injury when Defendant ordered Plaintiff to return to his cell on December 14, 2004, without assistance which resulted in Plaintiff's fall. Defendants have not specifically moved to dismiss this claim and so it remains pending.

### F. Motion to dismiss by Defendant Millcreek Hospital

Plaintiff alleges that his constitutional rights were violated by Defendant Millcreek Hospital arising out of treatment he received while hospitalized at that facility in May of 2005. In his opposition brief, Plaintiff further explains that he received medical treatment at Millcreek Hospital which "caused the Plaintiff even further trouble", he suffered severe complications from the medications which caused his abdomen to swell pushing his intestines into his rib cage and causing multiple organ failure.

Plaintiff's allegations against Defendant Millcreek Hospital do not rise to the level of a constitutional violation. Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

13

Plaintiff received medical treatment at Millcreek Hospital - it is the quality of the treatment to which Plaintiff objects and such a claim is a malpractice claim which is not cognizable in a civil rights action. Riddick v. Modeny, 2007 WL 2980186, at *2 (3d Cir. October 9, 2007) quoting Rouse v. Plantier, 182 F.3d192, 197 (3d Cir.1999) ("It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'").

Accordingly, the motion to dismiss filed by Defendant Millcreek Hospital should be granted as Plaintiff has failed to state a claim.

### G.   Plaintiff's motion to amend

Plaintiff has filed a motion requesting leave to add as a Defendant Prison Health Services, Inc., the employer of Defendants Baker, Mowry and Telega. Document # 73.

Federal Rule of Civil Procedure 15(a) states that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).

Plaintiff will be allowed to amend his complaint - both as to adding Prison Health Services, Inc. as a Defendant and as to more fully alleging his Eighth Amendment medical claim.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss filed by Defendants Baker, Mowry and Telega [Document # 9] be granted. The Clerk of Courts should be directed to terminate these Defendants from this action.

It is further recommended that the motion to dismiss filed by the Commonwealth Defendants [Document # 32] be granted in part and denied in part. More specifically,

   a)   the motion to dismiss should be granted as to the dismissal of Defendant "Pennsylvania Department of Corrections SCI-Albion" based upon Eleventh Amendment immunity;

   b)   the motion to dismiss should be granted as to the dismissal of Defendants Beard and Brooks; and

   c)   the motion to dismiss should be denied as to Defendants Overton, Wilkes, and Youcklan.

The Clerk of Courts should be directed to terminate "Pennsylvania Department of Corrections SCI-Albion," Beard, and Brooks as Defendants from this action. As Defendants have not moved to dismiss the Eighth Amendment (non-medical) claim against Defendant Bennett, that claim remains pending. The claims against Overton, Wilkes, and Youcklan should also remain pending. Further, Plaintiff will be directed to amend his complaint to more fully allege his Eighth Amendment medical claim against the Commonwealth Defendants.

It is further recommended that the motion to dismiss filed by Defendant Millcreek Hospital [Document # 43] be granted.

By separate Order filed this day, Plaintiff's motion requesting leave to add Defendant Prison Health Services [Document # 73] is granted and Plaintiff is directed to file an amended complaint in conformity with this Report and Recommendation before November 20, 2007.

By separate text Order filed this day, Plaintiff's motion to dismiss the motion to dismiss [Document # 62] is converted to an Opposition Brief.

By separate Order filed this day, Plaintiff's "Motion to Produce Documents" [Document

# 77] is granted and Plaintiff's "Motion of Notice to Serve Subpoena to Defendant Maxine Overton" [Document # 78] is denied.  A telephonic hearing will be conducted as to Plaintiff's "Motion of Retaliation by Defendant's and Staff Members" [Document # 80].

      In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

                                                    Susan Paradise Baxter
                                                    SUSAN PARADISE BAXTER
                                                    Chief United States Magistrate Judge

Dated: October 31, 2007